# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

IEACIS DAVIS, individually and on behalf
of others similarly situated,

       Plaintiff,

v.                                                                    CV 12-0388 WPL/KBM

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before me on cross motions for summary judgment filed by Ieacis Davis (Doc. 20) and the Commissioner of the Social Security Administration ("Commissioner") (Doc. 26). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge, resolve dispositive matters, and enter a final judgment. Having reviewed these motions, the related filings, and the relevant law, I conclude that Davis's claim must be dismissed for failure to present a live case or controversy.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

The Social Security Administration ("SSA") has long required claimants to its Disability Insurance Benefits ("DIB") program to provide medical evidence and other evidence showing the presence of a disability. *See* 42 U.S.C. § 423(d)(5)(A) (2006) (requiring disability benefits claimants to furnish evidence of disability). However, for instances where the claimant's medical

---

[1] Unless otherwise indicated, the facts described herein are not in dispute.

sources do not provide sufficient evidence of disability to SSA, Congress has granted SSA authority to conduct consultative examinations and to promulgate regulations governing these consultative examinations. *See id.* § 421(j); *see also* 20 C.F.R. § 404.1517 (2012). SSA defines a consultative examination as "a physical or mental examination or test purchased for [the claimant] at our request and expense from a treating source or another medical source." 20 C.F.R. § 404.1519.

When SSA arranges for a consultative examination, it must give the claimant "reasonable notice of the date, time, and place the examination or test will be given, and the name of the person or facility who will do it." *Id.* § 404.1517. Further, a claimant may object to being examined by the designated medical source, and "[i]f there is a good reason for the objection, [SSA] will schedule the examination with another medical source." *Id.* § 404.1519j. Such good reasons can include situations where the examiner "had previously represented an interest adverse to [the claimant]" or where the medical source "had examined [the claimant] in connection with a previous disability determination or decision that was unfavorable to [him or her]." *Id.*

On March 21, 2012, New Mexico Disability Determination Services ("DDS"), the state agency responsible for making disability determinations on behalf of SSA, sent a Notice of Disability Examination to Davis, a DIB claimant. (Doc. 1 Ex. A.) The Notice specified the date, time, and location of her upcoming consultative examination, as well as the name of the facility where the examinations would be performed and the name of the contracting company arranging for the examinations. (*Id.*) Although Davis's notice did not include the name of her examining physician (Doc. 1 at 4), it did include the following passage: "Your exam has been scheduled with Med Plus Disability Adjudications. If you desire to know the examining doctor's name

before your appointment, you can ask the ADJUDICATOR assigned to your claim when you call and CONFIRM attendance of this exam." (Doc. 1 Ex. A at 2.) The consultative examination was scheduled for April 19, 2012.

On April 13, 2012, Davis filed a petition for a writ of mandamus in this Court on behalf of herself and other persons who are seeking DIB and/or Supplemental Security Income ("SSI"), who have been referred to the appropriate state agency for a determination of disability, for whom SSA has (or will have) scheduled a consultative examination subject to notice requirements, and whose consultative examination notices do not (or will not) bear the name of the evaluating medical source. (Doc. 1 at 2.)[2] Relying principally on this Court's recent decision in *Albers v. Astrue*, Civ. No. 11-092 WJ/KBM, Doc. 42 (D.N.M. Nov. 18, 2011), Davis alleges that the omission of the examining physicians' names on DDS's Notices of Disability Examination violates SSA's regulations governing such notices and deprives claimants of the opportunity to object to the physicians if good cause exists to do so. (*Id.* at 4-5.) In light of the

---

[2] In defining the class, Davis refers to claimants for disability benefits under Title II (DIB) and Title XVI (SSI) of the Social Security Act. (Doc. 1 at 2.) However, despite this reference, Davis goes on to define the prospective class of plaintiffs as including claimants receiving consultative examinations that are subject to notice requirements found in Title 20, Chapter III, Part 404, Subpart P of the Code of Federal Regulations (*see id.*), a subpart that only includes regulations pertaining to DIB claimants. Moreover, Davis's motion for summary judgment and related filings focus exclusively on regulations concerning DIB claimants; virtually no mention is made of regulations relevant to SSI claimants. (*See* Doc. 21 *passim* (referring to 20 C.F.R. § 404.1519 and related provisions); Doc 30 *passim* (same); Doc. 31 *passim* (same).)

Davis sometimes appears to cite to regulations under Title 20, Chapter III, Part 416, Subpart J of the Code, which applies to SSI claimants. For example, Davis defines the class in part as those who have been referred to a state agency "pursuant to 29 C.F.R. § 416.1001." (Doc. 1 at 2, 3.) I presume that Davis is referring to the corresponding section of Title 20, since no regulation exists at the cited section of Title 29 of the Code of Federal Regulations and since Davis cites to 20 C.F.R. § 416.1001 in her summary judgment motion (*see* Doc. 21 at 3, 4). Further, Davis refers to consultative examinations purchased "pursuant to 29 C.F.R. § 416.1519a." (Doc. 1 at 2; Doc. 21 at 3.) Assuming again that Davis is referring to Title 20 of the Code, any corresponding section would pertain to SSI claimants – if any regulation existed at 20 C.F.R. § 416.1519a. Presumably Davis is actually referring to 20 C.F.R. § 404.1519a, which governs the purchase of consultative examinations for DIB claimants.

Because I find that I have no jurisdiction over this action due to justiciability concerns, I do not proceed to consider whether either her individual claim or her proposed class encompasses SSI claims as well as DIB claims.

Court's holding in *Albers*, Davis requests that I issue a writ of mandamus compelling the Commissioner to disclose the names of the medical sources who will examine claimants prior to their consultative examinations. (*Id.* at 5.) Davis provides affidavits from several attorneys in New Mexico who regularly represent DIB and SSI claimants and who attest that DDS regularly sends out consultative examination notices that do not include the name of the physician who will perform the examination. (Doc. 1 Exs. B-G.)[3]

SSA reached an initial determination that Davis was not disabled on August 14, 2012. (Doc. 25 at 7.) A little over two months later, Davis filed a Motion for Summary Judgment (Doc. 20) and supporting memorandum (Doc. 21) pursuant to a briefing schedule set by the referral judge in this matter. In her motion, Davis primarily relies on the Court's conclusions in *Albers* to argue that the Court should require the Commissioner to give DIB and SSI claimants thirty days' written notice of any consultative examinations and to include the name of the examining physician in that notice. (*Id.* at 8.)

In response, the Commissioner argues that Davis has failed to meet the prerequisites for a mandamus claim. (Doc. 25.) As part of this argument, the Commissioner contends that Davis does not have standing in this matter, claiming that there is no live controversy before me since Davis never asked DDS to perform a duty and since her claim is now at the reconsideration stage. (*Id.* at 7.) After filing his response, the Commissioner also moved for summary judgment and dismissal of Davis's case with prejudice, incorporating and based largely on the arguments against mandamus presented in his response. (Doc. 26; Doc. 27.)

Davis filed a response to the Commissioner's motion for summary judgment in which she

---

[3] Davis also attaches the first page of what appears to be a similar affidavit from one of her current attorneys (Doc. 1 Ex. H). However, the affidavit does not bear the putative affiant's signature or any information indicating that the affiant provides his statements under oath. Davis repeats this error when she includes the same document with her summary judgment motion. (*See* Doc. 21 Ex. H.) As a result, I do not include this document in my citation to affidavits provided by Davis.

disputes the Commissioner's legal arguments. (Doc. 30.) Both parties also filed reply briefs to their respective motions. (Doc. 31 (Davis's reply to the Commissioner's response to her motion); Doc. 32 (the Commissioner's reply to Davis's response to his motion).) Davis has not filed a motion to certify the proposed class.

This matter is now before me on the parties' cross motions for summary judgment and their responses and replies thereto.

## ANALYSIS

The Commissioner contends that Davis does not have standing to request this writ. (Doc. 25 at 7.)[4] However, in making this argument, the Commissioner does not directly discuss injury, causation, or the adequacy of the requested remedy, *see, e.g.*, *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); nor does he assert a lack of standing due to prudential concerns, *see Bennett v. Spear*, 520 U.S. 154, 162 (1997). Instead, the Commissioner argues that there is not any "actual, live controversy to adjudicate," since Davis "did not ask the DDS to perform a duty" and Davis's claim remains in the reconsideration phase of the administrative process. (Doc. 25 at 7.) In light of this argument, and considering the authority cited by the Commissioner, I interpret this as an argument that Davis's claim is not ripe for judicial review.

However, the Commissioner also cites to caselaw from a sister circuit discussing mootness. (*See* Doc. 25 at 7 (citing *Campesinos Unidos, Inc. v. U.S. Dep't of Labor*, 803 F.2d 1063, 1067 (9th Cir. 1986).) In fact, mootness concerns do exist here. Davis's claim has proceeded to the point where no other consultative examinations are currently scheduled, as her

---

[4] The Commissioner raises justiciability questions in the context of whether Davis is entitled to a writ of mandamus, arguing that such concerns would affect whether Davis has a clear right to relief. (*See* Doc. 25 at 7). However, if Davis's claim is not justiciable, then it would be improper to analyze the merits of her mandamus request. I therefore consider the justiciability of Davis's claim prior to any mandamus analysis.

claim has been denied and has proceeded to the reconsideration stage. (*See id.*) Davis concedes that her "opportunity to be afforded legally sufficient notice in this case has passed," although she insists that the matter continues to be of concern for other DIB claimants. (Doc. 31 at 5.) Having reviewed the undisputed facts, I conclude that Davis's individual and class claims are moot, and I do not reach the issue of ripeness.

## I.      Mootness of Davis's Individual Claim

Federal courts, seeking to "avoid [issuing] advisory opinions on abstract propositions of law," will generally abstain from considering a case that has "lost its character as a present, live controversy." *Hall v. Beals*, 396 U.S. 45, 48 (1969). Although "certain cases which appear technically mooted[] are in reality live controversies because they will recur and again evade review[,] . . . there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party" in order for such cases to merit court review. *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1478-79 (10th Cir. 1984) (citations omitted).

SSA initially denied Davis's DIB claim on August 14, 2012. She apparently does not expect that SSA will schedule additional consultative examinations during the reconsideration process, as she expressly observes that her time to receive notice in this case has passed. (Doc. 31 at 5.) Accordingly, Davis has not manifested a reasonable expectation that she will face the same alleged regulatory violations, and she has not demonstrated any probability that she will be subject to this controversy again. These circumstances suggest that there is little that I could order SSA to do for Davis through a writ of mandamus, and as such there no longer appears to be a live controversy as to Davis's individual claim. That claim is therefore moot, and I proceed to consider how this determination impacts the viability of Davis's class-action claim.

## II.      Mootness of Class Claims

"As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified." *Reed v. Heckler*, 756 F.2d 779, 785 (10th Cir. 1985) (citing *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)). Still, "[i]n light of the relative independence of the class entity from any one party, the [Supreme] Court has recognized the more 'flexible character of the Art. III mootness doctrine' in the class action context." *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980)). Consequently, the mooting of a putative class representative's claim does not always moot the claims of the class. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755-56 (1976) (class action remains active where class is certified before the representative's claim was mooted); *see also Geraghty*, 445 U.S. at 404 & n.11 (class action remains active where representative's claim is mooted while a district court's denial of class certification is being challenged on appeal).

The Supreme Court has similarly suggested that "where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff[,] [then] litigation may continue notwithstanding the named plaintiff's current lack of a personal stake," even if the plaintiff loses this stake prior to class certification. *See Geraghty,* 445 U.S. at 398 (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Roe v. Wade*, 410 U.S. 113, 123-25 (1973)). In such cases, the standard for meeting this "capable of repetition, yet evading review" doctrine may be lowered from a "reasonable expectation" to "some likelihood" that the putative class representative will become involved in the same controversy in the future. *See id.* Alternatively, the action may continue if the claims pursued are so "inherently transitory" that a trial court would not have time to consider certification before the individual

plaintiff's claim would become moot. *Id.* at 398-99 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

The Tenth Circuit has applied these two exceptions to the general rule to instances where "a diligently pursued motion for class certification [has been] pending before the district court" when a putative class representative's claim becomes moot. *See Reed*, 756 F.2d at 786-87 (citing *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1048 (5th Cir. 1981)); *see also Milonas v. Williams*, 691 F.2d 931, 937-38 (10th Cir. 1982). Recently the Tenth Circuit also found that a live controversy exists where the defendants to a class action suit tender a Rule 68 offer of judgment to the proposed class representative and the representative files a timely motion for certification, even if that motion is filed after the offer of judgment is tendered. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1247-50 (10th Cir. 2011); *cf. Reed*, 756 F.2d at 786-87 (recognizing that consideration of class certification motions should not be limited by "the ability of the defendant to moot the claims of the named plaintiffs by favorable judgments"). Otherwise, the Tenth Circuit continues to embrace the "general rule" that a class action should be dismissed when the individual plaintiff's claim becomes moot prior to class certification. *See Clark*, 590 F.3d at 1138.

These guidelines provide ample reason to dismiss this case. Davis filed her complaint on April 13, 2012, and SSA issued an initial determination as to her disability claim on August 14, 2012. She did not file a certification motion in the intervening four months. Thus, there was no certification motion pending before me when Davis's claim was mooted. Moreover, even if the pendency of a motion for class certification were irrelevant here, Davis states that she does not expect to be subjected to the same alleged violations (Doc. 31 at 5), thereby failing to demonstrate that there is any likelihood that she will face the same problems with future

consultative examinations. Therefore, the "capable of repetition, yet evading review" exception cannot apply in this case.

Additionally, even if a class certification motion had been filed or the pendency of such a motion were irrelevant, I do not believe that Davis's claim is inherently transitory to the extent that a trial court could not have time to consider certification. Although there are few clear instances of the Tenth Circuit applying this exception, cases from the Supreme Court and other circuits provide some useful guideposts. In *Gerstein*, the Supreme Court entertained the appeal of plaintiffs purporting to represent a class of pretrial detainees despite the mooting of their individual claims, recognizing that such "detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." 420 U.S. at 110 n.11; *see also Geraghty*, 445 U.S. 398-99 (construing *Gerstein* to sometimes allow review of "inherently transitory" class claims despite the mootness of an individual plaintiff's claim prior to class certification). By contrast, the Seventh Circuit held that a district court did not have jurisdiction over a purported class action for injunctive relief, observing that even though the individual plaintiff's claim became moot only a week after he filed his lawsuit, the alleged wrongdoing had occurred four months earlier, giving a district court plenty of time to rule on any class certification motion had one been filed. *See Banks v. Nat'l Collegiate Athletic Ass'n*, 977 F.2d 1081, 1086 (7th Cir. 1992). Other cases from sister circuits have found an even shorter time period to be sufficient for consideration of a class certification motion. *See, e.g.*, *Trotter v. Klincar*, 748 F.2d 1177, 1184-85 (7th Cir. 1984) (rejecting the argument that seventy days was insufficient time for a court to rule on a motion for class certification).

Like the plaintiff in *Banks*, Davis had at least four months to move for class certification before her individual claim was mooted, yet she failed to do so. Further, no such motion has been filed even today, making it unlikely that Davis's claim would fall under this exception in any case. I therefore find Davis's claim to be more analogous to the circumstances in *Banks* and *Trotter* than to those in *Gerstein*, and I rule that the "inherently transitory" exception to the general rule does not apply here.

Finally, SSA did not provide Davis with anything equivalent to an offer of judgment. Even if the exception governing offers of judgment to class representatives were broadly construed to apply in these circumstances, such an exception has only been granted when a timely motion for certification has eventually been filed. *See Lucero*, 639 F.3d at 1250. Again, no such motion has been filed in this case. Therefore, the exception governing class action suits where a Rule 68 offer of judgment has been made to the putative class representative does not apply in this case.

Davis's individual claim has been mooted, and her claim does not fall under any of the exceptions to the general rule that the mooting of a class representative's claim requires dismissal of the class action suit where the class has not been certified. Accordingly, I do not have jurisdiction over this case, and this action must be dismissed.

## CONCLUSION

Davis no longer has a present, live case or controversy that I could adjudicate. Further, I may not proceed to consider the purported class claims, as the mooting of Davis's individual claim requires dismissal of the class action under these circumstances. *See Reed*, 756 F.2d at 785. Therefore, I dismiss all claims in this action as moot.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.